Argued and submitted June 24, 2010, affirmed January 12, 2011

OREGON STATE POLICE OFFICERS' ASSOCIATION,
*Petitioner,*

*v.*

STATE OF OREGON
and Oregon State Police,
*Respondents.*

Employment Relations Board
UP3007; A141506

246 P3d 97

Daryl S. Garrettson argued the cause for petitioner. With him on the brief was Garrettson, Gallagher, Fenrich & Makler, P.C.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondents. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

LANDAU, J., pro tempore.

**LANDAU, J., pro tempore**

Petitioner, the Oregon State Police Officers' Association (association), filed an unfair labor practice complaint against the Oregon State Police (OSP) arising out of OSP's unilateral change of working conditions. OSP argued that the complaint was untimely, because it had been filed more than 180 days after the change in working conditions actually occurred. The association argued that its complaint was timely, because timeliness should be measured from the date that an unfair labor practice is discovered, not when it actually occurred, and the association filed within 180 days of discovery. The Employment Relations Board (ERB) concluded that it is not necessary to determine whether the timeliness of a complaint dates from the occurrence, as opposed to the discovery, of an unfair labor practice, because the association did not, in fact, file the complaint within 180 days of the date that it knew or in the exercise of reasonable diligence should have known about the unfair labor practice. The association seeks judicial review, arguing that ERB erred in concluding that its complaint was untimely. We affirm.

The relevant facts are not in dispute. In March 2006, Robert Reish, the wireless group manager for the Oregon Department of Transportation (ODOT) and OSP, began working on a plan to redistribute the work load for ODOT and OSP communication system employees to improve overall efficiency and save costs for both agencies. The plan entailed assigning ODOT and OSP employees to service communications systems based on the system's location, regardless of whether it belonged to ODOT or OSP. In May 2006, Reish distributed the plan to all ODOT and OSP employees who belonged to the joint wireless group, advising them that they were required to keep the plan confidential. Although some OSP employees of the wireless group are members of the association, none of those employees was an officer or held any position in the association.

In August 2006, the wireless group held a retreat to discuss the plan further. Again, no association officers were invited to attend. In September 2006, ODOT and OSP employees of the wireless group began implementing the

essential work-sharing provisions of the plan. OSP and ODOT executed the final interagency service agreement (OSP/ODOT agreement) on December 18, 2006, and January 8, 2007, respectively. Under the terms of the OSP/ODOT agreement, its provisions retroactively applied to the work done between September 2006 and January 8, 2007.

Meanwhile, in October 2006, OSP and the association began negotiations regarding the renewal of their collective bargaining agreement. The first bargaining session was held January 16, 2007.

On May 30, 2007, while negotiations between OSP and the association were ongoing, an OSP wireless group employee and an association member, John Kessinger, approached the association president, Jeff Leighty, regarding the OSP/ODOT agreement and the fact that it included pay discrepancies between OSP and ODOT employees, even though they were doing the same work. Leighty immediately made an oral demand to Mike Halpern, the Department of Administrative Services (DAS) spokesman handling negotiations for OSP, to cease and desist the OSP/ODOT agreement and to bargain. Halpern indicated that he would discuss the issue with OSP and get back to him.

On June 29, 2007, Leighty repeated to Halpern his demand to bargain, but Halpern again stated that he would have to get back to him on that issue. The association then informed DAS that it would file an unfair labor practice complaint if OSP did not respond to its demand to bargain by July 25, 2007. On that date, Halpern told Leighty that OSP would continue the plan without bargaining. The association filed its unfair labor practice complaint against the state and OSP regarding the OSP/ODOT agreement on July 31, 2007.

ERB concluded that the association's complaint was untimely and dismissed it. ERB explained that ORS 243.672(3) requires that an unfair labor practice complaint be filed within 180 days of the "occurrence" of the unfair labor practice. ERB acknowledged that its own cases conflicted on the question whether the date of actual occurrence or the date of later discovery triggers the 180-day limitation period. But the board concluded that it did not need to resolve the

conflict in this case, because the association's complaint is untimely under either test.

First, addressing the occurrence test, ERB noted that the implementation of the OSP/ODOT agreement was a "unilateral act" that constituted a refusal to bargain under ORS 243.672(1)(e). According to ERB, that unilateral act occurred on September 1, 2006, when the OSP/ODOT agreement was implemented. Accordingly, ERB concluded, under an occurrence test, the 180-day limitation period began to run then. As a result, the association's complaint, which was filed some 11 months later, was untimely.

As for the discovery rule, ERB noted that, in some of its prior cases, it has calculated the 180-day period from the date that a complainant actually knew or, in the exercise of reasonable diligence, should have known of the unfair labor practice. As for the association's knowledge of the transfer of work, ERB concluded that, because the transfer had been fully implemented nearly a year before the filing of the complaint, it is appropriate to presume that the association was aware of that change. In any event, ERB explained, in the exercise of reasonable diligence, the association should have discovered the changes in work conditions: "It would derogate the basic purposes of the limitation period to toll its running, after a change in working conditions is implemented and its effects are fully apparent, simply because the labor organization leadership did not become aware of the change for some period of time."

On judicial review, the association first contends that ERB erred in concluding that the unilateral change in work conditions that was implemented on September 1, 2006, is even an unfair labor practice. According to the association, strictly speaking, what the statute prohibits is a refusal to bargain, and, in this case, the refusal to bargain did not occur until July 25, 2007, when, after the association's president demanded that OSP bargain regarding the OSP/ODOT agreement, OSP, directly and through its DAS representative, did not comply with that request. OSP responds that it is well settled under Oregon law that a unilateral change in work conditions is a *"per se"* violation of the duty to

bargain in good faith and is, accordingly, an unfair labor practice.

■ OSP is correct. We have consistently held that "[a] unilateral action on a mandatory subject of bargaining during negotiations is a violation of the duty to bargain in good faith." *Gresham Tchrs. v. Gresham Gr. Sch.*, 52 Or App 881, 889, 630 P2d 1304 (1981) (citing *Wasco County v. AFSCME*, 46 Or App 859, 613 P2d 1067 (1980)). For example, in *Gresham Tchrs.*, while the association and school district were in the middle of contract negotiations, the school district made the unilateral decision to increase "student contact hours." *Id.* at 883. We held that to be a "refusal" to negotiate that issue—a violation of the duty to bargain in good faith under ORS 243.672(1)(e).

In this case, the unilateral act was the OSP/ODOT agreement that transferred work between OSP and ODOT employees in the wireless group. The agreement was implemented on September 1, 2006, and finally executed on January 8, 2007, without OSP notifying the association and without fulfilling its duty to bargain. That[1] constituted a unilateral change of working conditions and amounted to a *per se* refusal to bargain for the purposes of ORS 243.672(1)(e).

The association next argues that, even if ERB was correct in concluding that such a unilateral act may constitute a refusal to bargain, that act did not trigger the 180-day limitation period of ORS 243.672(3). According to the association, the 180-day limitation period should run from the date that a complainant discovers the refusal to bargain, not when it actually occurred. The association insists that it was unaware of the transfer of work until May 30, 2007, well within 180 days of the filing of its complaint.

As we have noted, ERB concluded that, even under a discovery test, the association's filing of the complaint was

[1] An interesting question is whether the implementation of the agreement on September 1, 2006, or the formal execution of the agreement on January 8, 2007, constituted the unilateral act. But it is not necessary for us to decide that question in order to resolve the issues presented in this appeal.

untimely, either because the knowledge of its members concerning the unilateral change in work conditions could be imputed to the association or because, in any event, the association should have discovered the changes in the exercise of reasonable diligence. On review, the association takes issue with ERB's conclusion that the knowledge of its members may be imputed to the association itself. The association, however, does not address the portion of ERB's order in which ERB concluded that the association should have discovered the change in work conditions.

We agree with ERB that, even under a discovery rule, the association's complaint in this case was not filed within the 180-day limitation period of ORS 243.672(3). As ERB described it, applying a discovery rule would mean that the 180-day limitation period would begin to run from the date that the association either knew or reasonably should have known of the unlawful labor practice. *See, e.g.,* *Stone Boat Yard v. N. L. R. B.,* 715 F2d 441, 445 (9th Cir 1983), *cert den,* 466 US 937 (1984) (parallel limitation period under National Labor Relations Act "does not begin to run until the party filing the charge knows or has reason to know that an unfair labor practice has occurred"). No one in this case contests that description of a discovery rule.

In this case, ERB concluded that, because the transfer of work had been implemented by September 2006 and its effects were "fully apparent" at that time, the association should have discovered those effects in the exercise of reasonable diligence. Given ERB's finding that the change was fully implemented and the effects were fully apparent, we cannot say that ERB erred in concluding that the association should have been aware of them upon the exercise of reasonable diligence. And, as we have noted, the association does not advance any argument to the contrary.

We therefore conclude that ERB did not err in concluding that the association's complaint was not timely filed and in dismissing the complaint on that ground.

Affirmed.