No. 19 April 7, 2016 1

IN THE SUPREME COURT OF THE
STATE OF OREGON

Hanna VAANDERING,
Trent Lutz, Heather Conroy,
and Jill Gibson,
*Petitioners,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S063820)

En Banc

On petitions to review ballot title filed January 15, 2016; considered and under advisement February 23, 2016.

Margaret S. Olney, Bennett, Hartman, Morris & Kaplan, LLP, Portland, filed the petition and reply for petitioners Vaandering, Lutz, and Conroy.

Jill Gibson, Gibson Law Firm, Portland, filed the petition and reply for petitioner Gibson.

Shannon T. Reel, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the answering memorandum were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

KISTLER, J.

Ballot title referred to Attorney General for modification.

**KISTLER, J.**

Two sets of petitioners seek review of the certified ballot title for Initiative Petition 69 (2016) (IP 69). *See* ORS 250.085(2) (specifying requirements for seeking review of certified ballot titles). We review the ballot title to determine whether it substantially complies with ORS 250.035(2). *See id.* (stating standard of review). For the reasons explained below, we refer the ballot title to the Attorney General for modification.

IP 69, if enacted, would alter the rights and obligations that public employers, their employees, and the unions representing those employees owe each other under the Public Employee Collective Bargaining Act (PECBA), ORS 243.650 to ORS 243.782. Before explaining how IP 69 would affect those rights and obligations, we first describe the current law briefly. Under PECBA, public employees have the right to form, join, and participate in labor organizations for purposes of representation and collective bargaining with their public employer. *See* ORS 243.662. If a union is either recognized or certified as the exclusive representative of the employees within a bargaining unit, *see* ORS 243.682 (providing procedures for recognizing or certifying public employee unions), the employees in the bargaining unit may but need not join the union. PECBA, however, imposes a duty on unions to represent all employees within a bargaining unit without regard to whether the employees are union members. That duty includes negotiating terms of employment on behalf of all the employees within the bargaining unit. In the same vein, PECBA makes it an unfair labor practice for a public employer to provide different employment terms to union and nonunion employees to encourage or discourage union membership. ORS 243.672(1)(c).

To offset the costs of representing employees who choose not to join a union and who thus do not pay union dues, PECBA authorizes unions and public employers to enter into a "fair-share agreement" as part of a collective bargaining agreement. *See* ORS 243.650(10) (defining fair-share agreements). A "fair-share agreement" permits the deduction of a "payment-in-lieu-of-dues" from the salaries

of nonunion employees within a bargaining unit "to defray the cost for services by the [union] in negotiations and contract administration." *See* ORS 243.650(18) (defining payments in lieu of dues). *See also Davenport v. Washington Educ. Ass'n*, 551 US 177, 181, 127 S Ct 2372, 168 L Ed 2d 71 (2007) (describing the "fair-share" goal of "prevent[ing] nonmembers from free-riding on the union's efforts, sharing the employment benefits obtained by the union's collective bargaining without sharing the costs incurred").[1]

IP 69, if enacted, would effect two sets of changes to that framework. First, it would divide public employees within a bargaining unit into two groups (union and nonunion employees), and it would provide different means for determining the employment terms (wages, benefits, and other employment terms) for each group. Employment terms for union employees would be based on the collective bargaining agreement. IP 69 § 3(3). Employment terms for nonunion employees could not be based on a collective bargaining agreement but would be based instead on an assessment of each employee's "individual education, experience, training, skills, and performance." *Id.* §§ 3(2), 9(4), (5). Having provided for separate means for determining the employment terms for union and nonunion employees, IP 69 also provides that "[a] comparison of employment terms for union employees to the employment terms for [nonunion] employees, and any effects of such terms, may not form the basis of an unfair labor practice." *Id.* § 9(1)(c).

The second group of changes that IP 69 would effect concern a union's obligation to represent union and nonunion employees within a bargaining unit equally and nonunion employees' corresponding obligation to make "payments in lieu of dues." IP 69 would provide that a

---

[1] The First Amendment places limits on the extent to which public bodies can require public employees to participate in a union. *See Abood v. Detroit Bd. Of Educ.*, 431 US 209, 97 S Ct 1782, 52 L Ed 2d 261 (1977). *Abood* held that the First Amendment does not prohibit public bodies from entering into collective bargaining agreements that require nonunion employees to pay their "fair share" of representation costs but that it does prohibit them from entering into collective bargaining agreements that require nonunion employees to pay for a union's political activities. *See Friedrichs v. California Teachers Association*, 578 US ___, ___ S Ct ___, ___ L Ed 3d ___ (2016) (per curiam) (affirming by an equally divided court a Ninth Circuit decision that followed *Abood*).

union is "not required to collectively bargain for or to provide any type of service to public employees who choose not to join a labor organization and who do not pay for such services." IP 69 § 10(1). By using the phrase "not required," the measure leaves open the possibility that a union may engage in collective bargaining that would benefit employees in the collective bargaining unit who do not join the union.[2]

Section (4) of the measure similarly would provide:

"(1)   Compulsory payments to labor organizations by public employees who choose to not join a labor organization shall be prohibited.

"(2)   Public employees who choose to not join or pay a labor organization may not benefit from labor organization bargaining, representation, or services without sharing representation costs."

*Id.* § 4. By its terms, subsection (4)(1) would prohibit nonunion employees from paying what PECBA currently describes as "payment in lieu of dues." At first blush, subsection (4)(2) appears to be a corollary of that proposition. It prohibits nonunion employees from benefitting from a union's efforts on behalf of its members. However, the last prepositional phrase in subsection (4)(2)—"without sharing representation costs"—suggests that, if nonunion members do benefit from "labor organization bargaining, representation, or services," they would owe their share of the costs of procuring those benefits. How those two subsections and section 10 of IP 69 work together is, at best, ambiguous.

The Attorney General certified the following ballot title for IP 69:

**"Public employer cannot compensate non-union employee based on union contract; limits union representation of non-members**

---

[2] Sometimes, it might be difficult for a union to negotiate benefits for its members without also benefitting nonunion employees, even if the union sought to limit its representation, as IP 69 would permit. Suppose, for example, a collective bargaining agreement required an employer to install an air filtration system to make the workplace healthier. That system presumably would benefit both union and nonunion employees, even if the union was "not required" to bargain on the latter group's behalf.

"**Result of 'Yes' Vote:**   'Yes' vote prohibits public employer compensating non-union employee based on union contract; public employee unions need not represent non-members; limits charging representation fees to non-members.

"**Result of 'No' Vote:**   'No' vote retains current law: unions represent all public employees in organized bargaining unit; member, non-member compensation based on union contract; mandatory non-member fees permissible.

"**Summary:**   Currently, public employees in a bargaining unit may be represented by a union. Union membership cannot be required as condition of public employment. Union represents (in negotiations, contract enforcement) all public employees in bargaining unit. Collective bargaining agreements can require non-members to share the costs of the legally-required union representation. Compensation differences/conduct to encourage/discourage union membership prohibited. Measure prevents public employer from establishing non-union employee compensation and employment terms by union contract, allows compensation differences. Measure removes requirement that public employee unions represent non-members; prohibits requiring non-members to pay costs of representation unless they benefit from representation; union members must renew membership annually. Measure applies to new, renewed, or extended contracts entered into after the effective date of measure. Other provisions."

Petitioner Gibson challenges the ballot title's caption, the "yes" result statement, and the summary. Petitioners Vaandering, Lutz, and Conroy (collectively Vaandering) challenge the ballot title's caption, the "yes" and "no" result statements, and the summary.

We begin with the caption. ORS 250.035(2)(a) provides that a ballot title must contain "[a] caption of not more than 15 words that reasonably identifies the subject matter of the state measure." A caption will reasonably identify the subject matter of a measure if it describes the "actual major effect" of the measure or, if there is more than one major effect, all the major effects that can be described within the word limit. *See Lavey v. Kroger*, 350 Or 559, 563, 258 P3d 1194 (2011). To identify an "actual major effect," we consider the "changes that the proposed measure would enact in the

context of existing law." *Rasmussen v. Kroger*, 350 Or 281, 285, 253 P3d 1031 (2011).

We have recognized that attempting to distill a complicated, multifaceted measure into 15 words is often difficult, and sometimes impossible. That difficulty may require a caption that uses more general terms in order to reasonably capture the universe of the measure's major effects. *McCann/Harmon v. Rosenblum*, 354 Or 701, 707, 320 P3d 548 (2014) (explaining that, "[a]t times, it may be necessary to describe [the measure's] effects generally"). Put differently, specificity can lead to its own problems, such as a caption that selects and identifies only some out of multiple major effects, which in turn may "understate the scope of the proposed measure's subject matter." *Greenberg v. Myers*, 340 Or 65, 69, 127 P3d 1192 (2006).

Both sets of petitioners raise essentially the same challenge to the caption, although their specific arguments differ. At bottom, both sets of petitioners argue that the caption is too narrow and focuses on only some of the measure's major effects, to the exclusion of other major effects. Gibson views IP 69 as having four major effects.[3] In her view, the caption is "slanted" because it describes what she views as the negative aspects of the measure without mentioning what she sees as its positive aspects. Vaandering views IP 69 as having five major effects.[4] She argues that the caption is defective because it focuses on only two of those effects.

We agree that the caption fails to substantially comply with the requirement that it reasonably identify the

---

[3] Gibson identifies those effects as: (1) prohibiting payments in lieu of dues for nonunion members; (2) relieving the union of the duty to represent all members in a bargaining unit; (3) requiring employers to compensate nonunion employee based on "employee's individual education, experience, training, skills, and performance"; and (4) prohibiting employers from compensating nonunion employees based on a collective bargaining agreement.

[4] Vaandering identifies those effects as: (1) requiring public employers to provide different wages, benefits, and other terms of employment for union and non-union employees; (2) requiring employers to base employment terms for each nonunion employee on individualized criteria rather than the collective bargaining agreement; (3) weakening PECBA's anti-discrimination provisions and thereby allowing employers to encourage or discourage union membership; (4) prohibiting fair share agreements; and (5) prohibiting nonunion employees from "benefitting" from union representation without sharing representation costs.

measure's subject matter. The Attorney General's caption focuses on two aspects of the measure that, in some ways, mirror each other: nonunion employees may not be compensated based on a collective bargaining agreement and unions have no obligation to represent nonunion employees. However, a caption that mentions only those two aspects of the measure fails to convey all the measure's major effects.

IP 69 is not limited to a prohibition against nonunion employees being compensated based on the collective bargaining agreement and the corollary proposition that unions would have no obligation to represent nonunion employees. Rather, IP 69 would establish employment terms (wages, benefits, and other terms of employment) differently for union and nonunion employees. The employment terms for union employees would be based on the collective bargaining agreement while the employment terms for nonunion employees would be based on an individualized assessment of each "employee's individual education, experience, training, skills, and performance." IP 69 § 9(5). Under IP 69, treating employees differently in terms of wages, benefits, and conditions of employment because of their union status would not give rise to an unfair labor practice. Finally, unions would not be required to represent nonunion employees, and the measure would prohibit requiring nonunion employees to make payments in lieu of dues.[5]

In our view, those changes are major effects of the measure. We recognize that a caption cannot identify all those effects completely in 15 words. Sometimes, the 15-word limit will require trade-offs between breadth and detail. *See McCann/Harmon*, 354 Or at 707. We think that the caption could have complied with the statutory requirement by emphasizing the main effect of the measure (establishing employment terms differently for union and nonunion public employees), while identifying briefly the types of changes that the measure would effect. For example, the caption

---

[5] As discussed above, in providing that nonunion employees may not receive benefits from a "labor organization's bargaining, representation, or services without sharing representation costs," IP 69 leaves open the possibility that some benefits may extend to nonunion employees from a union's representation of its members, which perhaps could trigger an obligation under IP 69 for nonunion employees to bear their share of the representation costs of those benefits.

could have said, "Establishes employment terms differently for union, nonunion public employees; modifies bargaining, representation, cost-sharing, anti-discrimination laws."[6] We leave it to the Attorney General to decide whether another caption better describes the major effects of IP 69. We agree, however, that the caption, as presently drafted, conveys only a few of those effects and must be modified.

We now turn to the "yes" and "no" result statements. Both Gibson and Vaandering challenge the "yes" result statement. A ballot title must include "[a] simple and understandable" statement of no more than 25 words that describes the result if the measure is approved. ORS 250.035(2)(b). A "yes" result statement "should describe the most significant and immediate effects of the ballot initiative for the general public." *McCann/Harmon*, 354 Or at 707 (citation and internal quotation marks omitted).

The Attorney General certified the following "yes" result statement:

> "**Result of 'Yes' Vote:**   'Yes' vote prohibits public employer compensating non-union employee based on union contract; public employee unions need not represent non-members; limits charging representation fees to non-members."

Both Gibson and Vaandering argue that the "yes" result statement is underinclusive for the same reasons that the caption is underinclusive. Vaandering argues that the "yes" result statement focuses too narrowly on one aspect of the measure—compensation for nonunion employees—when the larger effect of the measure, which the "yes" result statement does not mention, is that the measure authorizes different employment terms for union and nonunion public employees. As a corollary to her argument, Vaandering notes that the measure would eliminate the current prohibition on public employers' "[d]iscriminat[ing] in regard to *** any terms or condition of employment for the purpose of encouraging or

---

[6] The possible caption set out above is taken largely from one that Vaandering suggested. While Vaandering had suggested a caption that would say "[r]equires different employment terms," the measure technically would not require different employment terms. It would require different methods for determining employment terms for union and nonunion employees. The suggestion in text reflects that distinction.

discouraging membership in an employee organization." *See* ORS 243.672(1)(c).[7]

Both of Vaandering's points have merit. An important result of IP 69 would be to divide employees within a bargaining unit into two groups—union and nonunion employees—and establish the terms of employment differently for each group. A related result would be that providing different terms of employment to union and nonunion employees will no longer give rise to an unlawful employment practice. The "yes" result statement fails to convey those important results and must be modified.

Gibson faults the "yes" result statement for not mentioning that the terms of employment for nonunion employees would be based on an assessment of each employee's "individual education, experience, training, skills, and performance." IP 69 § 9(5). We agree with Gibson that the "yes" vote statement does not reflect how the terms of employment for nonunion employees would be established, but we are not persuaded that it must explain that point specifically. The Attorney General reasonably could reserve a more specific explanation for the summary.

Only Vaandering challenges the "no" result statement. That statement must be "[a] simple and understandable" statement of no more than 25 words that describes the results if the measure is rejected; in other words, the "no" result statement should describe the *status quo*. ORS 250.035(2)(c). The certified "no" result statement provides:

> "**Result of 'No' Vote:** 'No' vote retains current law: unions represent all public employees in organized bargaining unit; member, non-member compensation based on union contract; mandatory non-member fees permissible."

---

[7] Vaandering also argues that the clause in the "yes" result statement—that "public employee unions need not represent non-members"—is inaccurate because many of the conditions over which public unions bargain will affect nonmembers equally with members. Given the practicalities of collective bargaining and employee compensation plans, Vaandering may be correct. However, IP 69 provides that ORS 243.672(2)(a) does "not require a labor organization to represent, provide services to, or bargain on behalf of [nonunion] employees." IP 69 § 9(2)(a). We cannot say that the Attorney General's statement does not accurately reflect that provision.

Vaandering argues that the "no" result statement is deficient in three respects. She argues that: (1) it focuses on compensation, to the exclusion of other terms of employment; (2) it fails to explain that the fees that unions can recover from nonmembers are limited to representation costs that the union is legally obligated to provide; and (3) it fails to explain that it is currently unlawful to provide different employment terms based on union membership.

We agree with each of Vaandering's points. The measure is not limited to compensation but affects all terms of employment. Additionally, the phrase "mandatory non-member fees permissible" fails to state that only certain types of fees may be collected from nonunion employees. *See* ORS 243.650(18) (defining "payment-in-lieu-of-dues" as "an assessment to defray the cost for services by the exclusive representative in negotiations and contract administration of [nonunion employees]"). Finally, an important aspect of the current law is that it prohibits public employers from "[d]iscriminat[ing] in regard to * * * any terms or conditions of employment for the purpose of encouraging or discouraging membership in an employee organization." ORS 243.672(1)(c). Because IP 69 authorizes different treatment of union and nonunion employees in setting the terms of employment, it is important, in describing the current law, to identify the aspect of the law that would remain in effect if the measure is rejected.

Finally, we turn to the summary. ORS 250.035(2)(d) requires that the ballot title contain "[a] concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." Gibson argues that the summary fails to mention that, under IP 69, the terms of employment for nonunion employees must be based on each employee's "individual education, experience, training, skills, and performance." IP 69 §9(5). We agree that the summary should mention that IP 69 would require public employers to undertake an individualized assessment of each nonunion employee's qualifications in setting that employee's terms of employment.

Vaandering also challenges the summary, arguing that it fails to comply with ORS 250.035(2)(d) in five

respects. First, Vaandering argues that the summary's first sentence is inaccurate when it states that "[c]urrently, public employees in a bargaining unit may be represented by a union." Vaandering contends that a public employee cannot be "in a bargaining unit" unless the union has been recognized or certified as the employees' exclusive representative. Once a union has been recognized or certified as the employees' exclusive representative, all the employees in the bargaining unit will be represented by the union. *See* ORS 243.682. Presumably, the Attorney General intended to convey the idea that not every employee within a recognized bargaining unit must become a union member. However, we agree with Vaandering that it is inaccurate to imply that, under PECBA, a union need not represent all the employees within a recognized or certified bargaining unit. *See Conroy v. Rosenblum*, 358 Or 807, 816-17, ___ P3d ___ (2016) (recognizing that union must represent all employees in a bargaining unit).

Second, Vaandering urges that the summary's description of current anti-discrimination provisions is too narrow. The summary states: "Compensation differences/conduct to encourage/discourage union membership prohibited." Vaandering argues that current law prohibits treating union and nonunion employees differently based on their union membership, without regard to whether the different treatment is intended to encourage or discourage union membership. In support of her argument, Vaandering cites ORS 243.672(1)(a) and (c), and a Court of Appeals decision interpreting ORS 243.672(1)(a) and (e). *See Wy'East Education Assoc. v. Oregon Trail School*, 244 Or App 194, 207-10, 260 P3d 626 (2011).[8]

Vaandering's argument assumes that providing different terms of employment to union and nonunion members would be an unfair labor practice under ORS 243.672(1)(a), and that the Court of Appeals' analysis in *Wy'East* is correct.

---

[8] ORS 243.672(1)(a) makes it an unfair labor practice for a public employer to "[i]nterfere with, restrain or coerce employees in or because of the exercise of rights guaranteed in ORS 243.662." ORS 243.672(1)(c) makes it an unfair labor practice for a public employer to "[d]iscriminate in regard to *** any terms or condition of employment for the purpose of encouraging or discouraging [union] membership."

We express no opinion on whether Vaandering's argument under ORS 243.672(1)(a) is correct. However, for us to resolve the issue that she raises, we would have to decide the relationship between the specific unfair labor practice set out in ORS 243.672(1)(c) and the more general unfair labor practice set out in ORS 243.672(1)(a). We also would have to decide whether the Court of Appeals' decision interpreting ORS 643.672(1)(a) is correct. With the issue in that posture, we cannot say that the Attorney General did not substantially comply with her obligation to summarize the measure and its major effect by focusing only on the more specific unfair labor practice described in ORS 243.672(1)(c). *Cf. McCann v. Rosenblum*, 355 Or 256, 262, 323 P3d 955 (2014) (explaining that "a ballot title challenge ordinarily is not the appropriate forum for deciding legal issues that require interpretation of a proposed measure").

Third, Vaandering argues that, as with the caption and "yes" result statement, the summary's focus on "compensation" is too narrow and potentially misleading. We agree that the effects of the measure are not limited to compensation but extend to other terms of employment.

Fourth, Vaandering contends that the summary inaccurately describes a union's duty of representation under IP 69 and its ability to collect fair-share fees. The summary provides: "Measure removes requirement that public employee unions represent non-members; prohibits requiring non-members to pay costs of representation unless they benefit from representation." As we understand Vaandering's argument, she contends that the measure is ambiguous and that the summary goes too far, at this stage of the process, in attempting to resolve that ambiguity. She notes that the measure expressly prohibits public sector unions from collecting any money from nonmembers, and it prohibits nonmembers from "benefit[ting]" from labor representation "without sharing representation costs." *See* IP 69 § 4. In her view, it is unclear how unions can recover representation costs from nonmembers if they may not collect those costs. Alternatively and perhaps additionally, she contends that it is unclear what IP 69 means in using the term "benefit." She argues that, given that ambiguity,

the summary should not imply that unions can "requir[e] non-members to pay costs of representation [if] they benefit from representation."

We explained in *Wolf v. Myers*, 343 Or 494, 501, 173 P3d 812 (2007), that "the preparation of a ballot title necessarily requires some level of interpretation of the measure." However, we were also careful to explain that,

> "[w]hen confronted with the narrower problem of the meaning of a specific provision in a proposed measure that is subject to two or more plausible interpretations, we ordinarily have declined to choose (or to permit the Attorney General to choose) one of those interpretations for purposes of the ballot title."

*Id.* at 501. In this case, the relationship between subsections (4)(1) and (4)(2) is, at best, ambiguous. However, we think the Attorney General's summary substantially complies with the requirement that it capture that ambiguity.

As noted, the summary states that the measure "prohibits requiring non-members to pay costs of representation unless they benefit from representation." By stating the dependent "unless" clause as an exception to the prohibition on requiring nonmembers to pay representation costs, the summary does not express an opinion on how a union could collect fees from nonunion members if they benefit from representation. At the same time, the summary captures the suggestion in the measure that the prohibition on recovering fees from nonunion employees may not apply if a union's representation benefits those employees. That aspect of the summary substantially complies with the Attorney General's obligation to describe the measure accurately.[9]

Finally, we agree with Vaandering that the summary should mention a significant effect of the measure, which is that differences in terms of employment for union

---

[9] The Attorney General could have chosen to highlight the tension between those two aspects of IP 69 by juxtaposing them. She could have said, for example: "Prohibits requiring compulsory payments by nonmembers; nonmembers may not benefit from representation without sharing costs." We cannot say, however, that that part of the summary, as currently written, fails to substantially comply with the Attorney General's statutory obligation to summarize the measure.

and nonunion employees will not give rise to a unlawful labor practice.

For the reasons stated above, the caption, the "yes" and "no" vote result statements, and the summary should be modified.

Ballot title referred to Attorney General for modification.