On petition to review ballot title filed September 21; under advisement November 17, ballot title referred to Attorney General for modification December 31, 2009, modified ballot title certified February 4, 2010 (347 Or 609)

Steven C. BERMAN,
*Petitioner,*

*v.*

John R. KROGER,
Attorney General,
State of Oregon,
*Respondent.*

(SC S057801)

225 P3d 32

Aruna A. Masih, Bennett, Hartman, Morris & Kaplan, LLP, Portland, filed the petition and reply memorandum for petitioner.

Rolf C. Moan, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With him on the memorandum were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

KISTLER, J.

### KISTLER, J.

Petitioner seeks review of the Attorney General's certified ballot title for Initiative Petition 53 (2010). *See* ORS 250.085(2) (specifying the requirements for seeking review of certified ballot titles). This court reviews the certified ballot title to determine whether it substantially complies with ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review). For the reasons explained below, we refer the ballot title to the Attorney General for modification.

Initiative Petition 53, if enacted, would change the criminal law in six respects.[1] First, it would require an inmate incarcerated for committing a felony to serve at least 80 percent of his or her sentence,[2] but it would not affect mandatory minimum sentences. Second, as a general rule, it would give trial courts discretion to require that sentences be served consecutively or concurrently. Third, it would make sentencing guidelines advisory and give trial courts discretion to impose any punishment up to the statutory maximum. Fourth, it would require trial courts to report to the State Court Administrator certain sentencing information for each felony sentence, and it would direct the State Court Administrator to compile that information "as to each judge imposing sentence." Fifth, it would permit trial courts to require, as part of an inmate's sentence, that the Department of Corrections provide appropriate drug treatment services. Sixth, it would shift, from the counties to the state, the pre-sentencing and post-sentencing cost of incarcerating certain felons.

The Attorney General certified the following ballot title for Initiative Petition 53:

**"Changes laws governing felony sentencing, service of felony sentences, consecutive sentencing; increases state corrections responsibilities**

**"Result of 'Yes' Vote:** 'Yes' vote makes sentencing guidelines advisory; requires incarceration for 80% of

---

[1] A copy of the initiative petition is attached as an appendix to this opinion.

[2] Current law provides that felons sentenced under the sentencing guidelines are eligible for up to a 30 percent reduction in their sentences. Or Laws 2009, ch 660, § 18(7)(b).

felony sentence; increases state corrections responsibilities; requires compiling sentencing records; presumes consecutive sentencing.

"**Result of 'No' Vote:**   'No' vote retains: sentencing guidelines; mandatory minimum terms for certain felonies; county custody for some felons' incarceration; not requiring compiling sentencing records; concurrent sentencing presumption.

"**Summary:**   Current law: creates (through sentencing guidelines) felony prison terms of presumptive lengths based on particular crime and offender's history, while permitting courts to depart for substantial, compelling reasons; requires minimum terms for certain felonies, prohibits any release during minimum; generally requires felons to serve at least 70% of imposed prison term; makes sentence concurrent to others unless judgment says otherwise; requires state custody for felons imprisoned over a year, otherwise generally requires county custody. Proposed measure: makes sentencing guidelines advisory; retains existing statutory minimums; requires incarceration for 80% of any felony sentence before release; makes felony sentence consecutive to others unless judgment says otherwise; requires state to provide or fund all felony incarcerations; requires compiling information about each judge's felony sentencing. Other provisions."

Petitioner raises multiple challenges to the ballot title. We discuss his challenges to the caption, the "yes" vote result statement, and the summary.[3]

■   ORS 250.035(2)(a) requires the Attorney General to draft a 15-word caption that "reasonably identifies the subject matter of the state measure." Petitioner argues that the caption is underinclusive and thus inaccurate because it does not state that the measure would shift, from the counties to the state, the presentencing cost of incarcerating persons who are later convicted of felonies.[4]

---

[3] Petitioner also challenges the "no" vote result statement. We conclude, without further discussion, that that challenge is not well taken.

[4] Section 6 of the proposed measure assumes that counties currently bear both the pre- and the post-sentencing cost of incarcerating certain felons and would shift those costs to the state. Petitioner, however, focuses his objection solely on the caption's failure to mention shifting the presentencing costs to the state.

The caption states that the measure "increases state corrections responsibilities." That description—specifically, the use of the word "responsibilities"—is broad enough to include the increased financial responsibility that the measure, if enacted, would shift to the state. The measure is thus neither underinclusive nor inaccurate. Petitioner's objection, as we understand it, turns instead on a lack of specificity; he objects to the caption's failure to identify the specific responsibility—financial responsibility—that the measure would shift from the counties to the state. However, given all that the measure encompasses and the 15-word limit on captions, we cannot say that the caption does not substantially comply with the statutory goal of identifying the measure's subject matter.

Petitioner also challenges the "yes" vote result statement. ORS 250.035(2)(b) directs the Attorney General to draft, in 25 words or less, a "simple and understandable statement * * * that describes the result if the state measure is approved." Petitioner challenges the "yes" vote result statement for the same reason that he challenges the caption. He argues that the statement is deficient because it does not specifically mention that the state would be responsible for a greater share of the cost of incarcerating felons.[5] We reach a different conclusion regarding the "yes" vote result statement than we reached regarding the caption. The Attorney General has more words at his disposal to describe the result of the measure if it is approved. ORS 250.035(2)(a). And the court has explained that the statutory obligation to describe the result of the measure means "notify[ing] petition signers and voters of the result or results of enactment that would have the greatest importance to the people of Oregon." *Novick / Crew v. Myers*, 337 Or 568, 574, 100 P3d 1064 (2004). We agree with petitioner that the increased financial responsibility that the state would bear as a result of the measure is an important result that the "yes" vote result statement can and should identify.[6]

---

[5] The Attorney General argues that petitioner failed to raise this objection to the "yes" vote result statement before the Secretary of State and cannot raise it for the first time before this court. Petitioner, however, incorporated by reference the objections that he had raised to the caption, which included this objection.

[6] Petitioner argues that the "yes" vote result statement also is deficient because it does not say that the requirement to serve 80 percent of a sentence does

Finally, petitioner challenges the summary. ORS 250.035(2)(d) requires the Attorney General to summarize, in 125 words or less, "the state measure and its major effect." Petitioner argues that the summary's description of the current law (the reference to felons serving 70 percent of an imposed prison term) and its description of the proposed law (the reference to felons serving 80 percent of a sentence) are incomplete and thus inaccurate. Petitioner argues that both parts of the summary do not make it clear that the measure would not affect mandatory minimum sentences. The Attorney General responds that both aspects of the summary are accurate.

■       We agree with the Attorney General that the summary accurately describes the current law regarding mandatory minimum sentences. The summary correctly states that the current law "requires minimum terms for certain felonies, prohibits any release during minimum." We agree, however, with petitioner that the summary does not accurately describe the effect that the measure, if enacted, would have on mandatory minimum sentences. To be sure, the summary states that the measure would "retain[ ] existing statutory minimums." However, the next phrase in the summary states that the measure would "require[ ] incarceration for 80% of *any* felony sentence before release." (Emphasis added.) The summary does not say that the measure would continue to prohibit the early release of inmates who are serving a mandatory minimum sentence, and it therefore implies inaccurately that the measure, if passed, could result in the early release of an inmate who is serving a mandatory minimum sentence, such as a Measure 11 sentence. On referral, the Attorney General should modify the summary to identify that major effect.

The ballot title is referred to the Attorney General for modification.

---

not affect mandatory minimum sentences. Petitioner, however, did not raise that objection to the "yes" vote result statement before the Secretary of State and cannot raise it here. We are, however, referring the ballot title to the Attorney General for modification on other grounds, and the Attorney General is free to modify that aspect of the "yes" vote result statement on referral if he considers it appropriate to do so.

## APPENDIX

Section 1.   In order to improve criminal justice, to protect society, and to hold criminals more accountable for the harm they do to victims, the People hereby enact the following statute as the Oregon Sentencing Reform Act.

Section 2.   a.   Notwithstanding any other provision of law, no inmate who is incarcerated as a result of a felony conviction shall receive any reduction in sentence, release from custody, conditional release from custody, or any other form of early release, where such action will cause such inmate to serve any less than 80% of the original term of incarceration imposed by the sentencing court.

b.   This section does not in any fashion allow reduction of any mandatory minimum prison term, by any amount; any inmate must always serve 100% of any mandatory minimum term of imprisonment.

Section 3.   a.   A sentence imposed by the court may be made concurrent or consecutive to any other sentence that has been previously imposed or is simultaneously imposed upon the same defendant. A sentence is a consecutive term unless the judgment expressly provides for concurrent sentences.

b.   When a defendant is sentenced for a crime committed while the defendant was incarcerated after sentencing for the commission of a previous crime, the court shall provide that the sentence for the new crime be consecutive to the sentence for the previous crime.

Section 4.   ORS 137.123 is repealed.

Section 5.   a.   When sentencing a defendant for a felony crime, the court has discretion to impose any term of incarceration, any fine, and any other penalty, up to the maximum terms, fines, and penalties allowed by law, including ORS 161.605 and 161.625.

b.   Notwithstanding subsection (a) of this Section, Sentencing Guidelines, as enacted in Chapter 790, Oregon Laws 1989, and as amended and supplemented thereafter, and the rules adopted thereunder, are advisory only, and do not impose

any restriction on the actual authority of the court to impose sentence.

Section 6.   Throughout most of Oregon's history, the state was responsible for incarcerating felony criminals, and each county was responsible for incarcerating misdemeanor criminals. County jails were for misdemeanants, and state prisons were for felons. In recent years, the state has forced counties to incarcerate many convicted felons, imposing significant costs on the counties. Sections 6, 7, 8, and 9 of this Act are enacted in order to correct this abuse of state power.

Section 7.   The state shall fully reimburse each county, on a timely basis, for the county's actual cost of presentencing incarceration of any person convicted of a felony.

Section 8.   After sentencing for a felony conviction, the term of incarceration must be served in facilities provided or funded by the Oregon Department of Corrections. The department may rent jail space from any county, as needed, to hold persons convicted of felonies. The department and the county shall negotiate the rent under this section in an amount sufficient to reimburse the county for the actual costs of incarceration.

Section 9.   Sections 6, 7, and 8 of this Act apply to jail or prison time served by felons on or after July 1, 2011.

Section 10.   In order to let the public know the sentences being imposed on criminals by each judge, so the public can determine whether each judge is fairly applying the law, the People hereby enact Sections, 10, 11, 12, and 13 of this Act.

Section 11.   Each court shall report to the State Court Administrator the following information, if available, regarding each order imposing sentence for any felony crime:

(1)   The defendant's criminal record;

(2)   The crimes for which sentence was imposed;

(3)   The sentence imposed.

Section 12.   The Administrator shall compile the information reported under Section 11 of this Act as to each judge imposing sentence. The Administrator shall maintain the

records compiled as to each judge and make the records available for public inspection and copying.

Section 13.   Sections 10, 11, and 12 of this Act apply to any sentence imposed on or after July 1, 2011.

Section 14.   This Act does not, in any fashion, limit or otherwise restrict mandatory minimum prison sentence statutes, which shall remain in effect.

Section 15.   a.   When a defendant is sentenced for any felony crime, the sentence imposed by the court may include a requirement that the Department of Corrections shall provide appropriate drug treatment services, where the sentencing court finds:

i.)   The defendant is drug addicted;
ii.)   The defendant is at a high or medium risk of reoffending without treatment; and
iii.)   The defendant has moderate to severe treatment needs.

b.   Nothing in this Section creates any claim, right of action, or civil liability. This Section only requires the Department of Corrections to carry out the order of the sentencing court. The Department has the discretion to determine what drug treatment services are appropriate for the defendant.

c.   This Section applies to sentences imposed on or after July 1, 2011.

Section 16.   This Act is effective January 1, 2011, and applies to any sentence imposed for any act committed on or after January 1, 2011, except as to later operative dates, as provided in Sections 9, 13, and 15 of this Act.