136 April 21, 2016 No. 24

IN THE SUPREME COURT OF THE
STATE OF OREGON

Stacy M. CROSS,
Lisa A. Gardner,
Kimberly McCullough,
Michele Stranger Hunter,
Kara Carmosino, and
Chantal Downing,
*Petitioners,*

*v.*

Ellen F. ROSENBLUM,
Attorney General,
State of Oregon,
*Respondent.*

(SC S063863)

En Banc

On petitions to review ballot title filed January 29, 2016; under advisement March 29, 2016.

Margaret S. Olney, Bennett, Hartman, Morris & Kaplan LLP, Portland, filed the petition and reply for petitioners Cross and Gardner.

Katherine McDowell, McDowell Rackner & Gibson PC, Portland, filed the petition and reply for petitioner Downing. With her on the petition and reply was Felipe Alonso III.

Gregory A. Chaimov, Davis Wright Tremaine LLP, Portland, filed the petition and reply for petitioners McCullough, Hunter, and Carmosino.

Karla H. Ferrall, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the answering memorandum were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

WALTERS, J.

The ballot title is referred to the Attorney General for modification.

**WALTERS, J.**

Petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 61 (2016) (IP 61), arguing that the ballot title does not satisfy the requirements of ORS 250.035. We review a certified ballot title to determine whether it substantially complies with those statutory requirements. *See* ORS 250.085(5) (stating standard of review). For the reasons that follow, we refer the ballot title to the Attorney General for modification.

IP 61 has three sections. Section 1 provides: "No public funds shall be used to pay for any abortion, except when medically necessary or as may be required by federal law." Section 2 defines the terms used in section 1 and gives those terms meanings that are, in some respects, different from their ordinary meanings. Those definitions include the following:

> "1.  'PUBLIC FUNDS' are moneys under the control of a public official or custodian belonging to, or held for the benefit of, the State of Oregon or any of its political subdivisions, public corporations, municipal corporations, agencies, courts, boards, commissions, or committees.

> "2.  'USED TO PAY' means the act or process of expending public funds, directly or indirectly, to any person, facility, organization, or agency for providing or performing any abortion, or to cover the costs, premiums, or charges associated with a health insurance policy, contract, or plan that provides coverage for any abortion.

> "3.  'ABORTION' is the use of any means to terminate the clinically diagnosed pregnancy of a woman with knowledge that the termination by those means will cause, with reasonable likelihood, the death of the embryo or fetus. Abortion does not include contraceptive devices or methods used to inhibit or prevent conception, to terminate an ectopic pregnancy, or to remove an embryo or fetus that has died of causes other than abortion."

Section 3 provides that "[n]othing in this amendment shall be construed as prohibiting the expenditure of private funds for abortion services or restricting private health insurance providers from offering coverage for abortion services."

The Attorney General certified the following ballot title for IP 61:

> **"Amends Constitution:   Prohibits using 'public funds' for 'abortion' (defined) or health insurance plans covering 'abortion'; certain exceptions**
>
> **"Result of 'Yes' Vote:**  'Yes' vote amends constitution, prohibits using 'public funds' for 'abortion' (defined) or health insurance plans covering 'abortion,' unless woman in danger of death; other exceptions.
>
> **"Result of 'No' Vote:**  'No' vote retains current law allowing use of public funds for abortion or health insurance plans covering abortion when medical professional determines medically necessary.
>
> **"Summary:**   Amends Constitution. Current law allows abortion to be provided, when determined by medical professional to be medically necessary, under public health plans available to qualified and eligible persons, or under health insurance policies obtained through a public employer or other public service. Measure amends constitution to prohibit using 'public funds,' directly or indirectly, to pay for any 'abortion' (defined) or to facilitate obtaining health insurance that covers 'abortion.' Effect on OHSU unclear. Exceptions for payments required by federal law and for abortion necessary to prevent death of pregnant woman; other exceptions. Defines 'abortion' to exclude termination of ectopic pregnancy, removing dead fetus/embryo, or contraceptives that 'inhibit or prevent conception'; 'conception' not defined. Other provisions."

Three sets of petitioners challenge the certified ballot title for IP 61. Petitioners Cross and Gardner challenge all components of the ballot title; petitioners McCullough, Hunter, and Carmosino challenge only the caption and the "yes" result statement; and petitioner Downing challenges the ballot title as a whole but emphasizes the caption. We begin with the caption, which petitioners challenge on five grounds.[1]

---

[1] Not all petitioners raise all five challenges, but because the identity of the particular petitioners who raise particular challenges is not material to our determination of the merits of the challenges, we refer to all challenges as being made by petitioners generally.

The Attorney General's answering memorandum lays out and addresses each of those challenges, and we adopt her framework for analysis. The first challenge that the Attorney General addresses is that the caption fails to identify reduced access to abortion as the subject matter of the measure. Petitioners contend that IP 61 would eliminate public funds as a source of payment for abortions and that, as a consequence, people dependent on public funding for abortions (or health plans that cover abortions) would have significantly reduced access to abortion. Thus, petitioners argue, reduced access is the actual subject of the measure and must be identified in its caption.

The Attorney General acknowledges that reduced access to abortion "is a direct and inevitable result of the funding restriction." However, she asserts, "[v]oters will likely understand that individuals who rely on public funds for abortions will have restricted access to abortions if those funds are unavailable, even if that secondary effect is not expressly described in the caption."

We do not agree with the Attorney General that the fact that the subject matter of a measure will be obvious to voters is a valid justification for failing to identify it in the caption. ORS 250.035(2)(a) requires that the caption "reasonably identif[y] the subject matter" of the proposed measure. That requirement must be met even if the subject matter would be obvious to voters without its identification in the caption. *Kain/Waller v. Myers*, 337 Or 36, 44, 93 P3d 62 (2004). We do, however, agree with the Attorney General that, in this instance, the caption need not inform voters that the effect of its enactment will be reduced access to abortions.

We recognize that there are instances in which the best way to describe a measure's subject is to describe its major effect. *See, e.g.*, *Berman v. Kroger*, 347 Or 509, 512-13, 225 P3d 32 (2009) (effect of measure shifting fiscal responsibility for felony incarceration to state must be identified in caption). When a measure includes a feature that will significantly alter the current legal structure, and that feature "goes to the heart" of the measure, that feature may constitute the subject matter of a measure and not "merely

an effect" that may be described in the summary. *See Kain/ Waller*, 337 Or at 44 (fact that property tax cap would apply regardless of a property's value is effect that must be disclosed in caption). On the other hand, not all effects rise to that level. In this instance, we conclude that the certified caption substantially complies with ORS 250.035(2)(a). The Attorney General correctly identifies the subject matter of IP 61 as precluding the expenditure of public funds for abortions. The Attorney General could have chosen to include in the caption a more complete explanation of the measure as reducing access to abortions, but the Attorney General did not err in failing to do so. *See Caruthers v. Myers (S54528)*, 343 Or 162, 168, 166 P3d 514 (2007) (information on measure's effects perhaps could have been included in caption, but failure to include not error).

Petitioners' second challenge is that the caption does not adequately convey the meaning of the phrase "used to pay." As noted, IP 61 provides that no public funds shall be "used to pay" for certain services and defines the phrase "used to pay" to mean "the act or process of expending public funds, *directly or indirectly*, to any person * * * for providing or performing any abortion, or to cover the costs * * * associated with a health insurance policy, contract, or plan that provides coverage for any abortion." (Emphasis added.) Petitioners contend that the caption should make the breadth of that prohibition clear, either by stating that the prohibition applies to both direct and indirect expenditures, or by including the phrase "used to pay" in the caption and placing it in quotation marks to indicate that it is a defined term. The Attorney General responds that the caption already adequately alerts the public that the measure prohibits more than direct payments for abortions by referring to health plans. We agree that the reference to health plans is necessary, but the measure also implicates other indirect uses of public funds, such as having public employees process such funds. To accurately identify the subject matter of IP 61, the caption must indicate that it prohibits both direct and indirect expenditures of public funds to pay for abortions.

In their third challenge to the caption, petitioners point out another problem with the Attorney General's effort

to capture the defined meanings of the measure's terms. The certified caption places two terms in quotes—"public funds" and "abortion." However, the certified caption further annotates the word abortion as "'abortion' (defined)"; it does not do the same for the term "public funds." That inconsistency, petitioners contend, creates confusion. The Attorney General recognizes that inconsistency, but responds that it results from the strict word limit imposed by ORS 250.035(2)(a) and a substantive difference in the two terms. The measure's definition of the term "abortion," the Attorney General suggests, "seems more likely to be different than the common understanding of that term than its definition of public funds." Because the Attorney General sees the 15-word limit as precluding her from designating both terms as defined terms, she contends that it is more important to designate the term "abortion." We disagree. The word limits of ORS 250.035(2)(a) may not permit the Attorney General to annotate both terms as "(defined)," but they do permit the Attorney General to treat the terms equally. If the Attorney General were to use quotation marks to indicate that the terms are used in a unique way, then the Attorney General could revise the caption and describe its subject within the 15-word limit. For example, the caption could say: "Amends Constitution: Prohibits using 'public funds' directly/indirectly for 'abortion,' insurance, health plans covering 'abortion'; certain exceptions." We leave it to the Attorney General to decide the best way to accurately capture the subject of IP 61, but the caption as presently drafted must be modified.

The caption need not be modified, however, to respond to petitioners' fourth and fifth objections. Petitioners' fourth objection is that the caption should inform the public that IP 61 would "override" what petitioners contend is an existing constitutional right to "equal access" to abortions. Petitioners assert that the Court of Appeals' decision in *Planned Parenthood Assn v. Dept of Human Res.*, 63 Or App 41, 663 P2d 1247 (1983), *aff'd on other grounds*, 297 Or 562 (1984), interprets Article I, section 20, of the Oregon Constitution as "prohibiting unequal access to abortion based on ability to pay." Petitioners contend that IP 61 overrides that right and that that major effect must be described in the caption.

The Attorney General understands petitioners' argument as asking that we rule on the constitutionality of IP 61 before it is adopted. But that is not what petitioners are seeking. Petitioners recognize that IP 61 amends the Oregon Constitution and that, if enacted, the measure will set constitutional terms rather than violate them. Petitioners do not want the Attorney General to inform the public that IP 61 will violate the Oregon Constitution; they want the Attorney General to inform the public that IP 61 will override a particular interpretation of an existing provision of the Oregon Constitution. Although petitioners are correct that a new constitutional provision may override existing constitutional protections, we conclude that, given the 15-word limit, the caption adequately captures that concept by providing that IP 61 amends the constitution. An accurate description of current constitutional protections would require a more detailed legal explanation than the 15-word limit would allow. And, as we explain below, this court has not interpreted Article I, section 20, to impose the prohibition on which petitioners rely, and it is not our role to do so in this context.

Petitioners' fifth and final challenge to the caption is that, as defined, the term "abortion" includes certain contraceptives—nonsurgical birth control methods that work after the point of conception—and that the caption should inform the public of the breadth of that definition. Although the Attorney General does not respond to that challenge, we conclude that the Attorney General need not revise the caption for that purpose. We understand petitioners' point that the term "abortion" is generally associated with a surgical procedure and that, to accurately describe IP 61, the ballot title must describe the different meaning that the measure ascribes to it. However, in the caption, the Attorney General has signaled that the term "abortion" is not used in its everyday sense by enclosing it in quotations. Given the caption's 15-word limit, that is sufficient.

We turn to petitioners' challenges to the "yes" result statement.[2] ORS 250.035(2)(c) requires that the ballot title

---

[2] We reject without discussion petitioners' arguments regarding the "no" result statement.

contain a "simple and understandable statement of not more than 25 words that describes the result" if the initiative is approved or rejected. The purpose of the "yes" result statement is to "notify petition signers and voters of the result or results of enactment that would have the greatest importance to the people of Oregon." *Novick/Crew v. Myers*, 337 Or 568, 574, 100 P3d 1064 (2004).

Petitioners contend that the "yes" result statement in the certified ballot title for IP 61 carries forward the problems identified with respect to the caption. In a number of respects, we agree. The "yes" result statement fails to inform voters that IP 61 would prohibit both direct and indirect expenditures and annotates one term—abortion—as "(defined)," without also annotating "public funds" in that same fashion. The Attorney General must revise the "yes" result statement to make the changes that we have required her to make in the caption.

The Attorney General also must explain that the result of the enactment of IP 61 will be reduced access to abortion. The Attorney General acknowledges that reduced access to abortion is "a direct and inevitable result of the funding restriction," and that effect must be included in the "yes" result statement. *See Rasmussen v. Kroger*, 350 Or 533, 537-39, 258 P3d 1224 (2011) (description of fiscal effect of measure must be included in result statement). Similarly, if she can do so within the 25-word limit, the Attorney General also must explain that the term "abortion" includes certain contraceptives. Prohibiting the use of public funds to pay for nonsurgical procedures, including certain forms of contraception, is a "result" that would have great importance to the people of Oregon. Given other requirements that we have identified, it may be that the best that the Attorney General can do, within the 25-word limit, to describe that result is to use quotation marks around the word "abortion." However, if feasible, the Attorney General should do more to indicate that the term "abortion" includes the use of some contraceptives. Again, however, as we explain below, the Attorney General need not describe the decision in *Planned Parenthood* and how IP 61 would change it.

The remaining issue for our consideration, then, is the ballot title summary. The goal of a summary is to provide voters with enough information to understand what will happen if the measure is approved and the "breadth of its impact." *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 175, 777 P2d 406 (1989); *see also* ORS 250.035(2)(d) (summary must consist of a "concise and impartial statement" limited to 125 words, "summarizing the state measure and its major effect"). Petitioners contend that the summary for IP 61 does not meet statutory requirements because it fails to plainly describe the measure's undisputed impact on access to abortion and the use of certain contraceptives. For the reasons given above, we agree that both consequences are important to accurately describe the measure.

As written, the summary does not address the limitation on access to abortion that would directly follow from the enactment of IP 61. The Attorney General must revise the summary to describe that limitation. As written, the summary does address the broad definition of the term "abortion," but, with regard to contraception, it explains what the term abortion excludes, rather than what it includes. The summary provides that the measure "[d]efines 'abortion' to exclude termination of ectopic pregnancy, removing dead fetus/embryo, or contraceptives that 'inhibit or prevent conception.'" In taking that approach, the Attorney General uses the literal terms of the measure, but obscures the meaning of the term "abortion" rather than conveying the practical information that ORS 250.035 requires. *See Frazzini v. Myers (S055933)*, 344 Or 662, 667, 188 P3d 258 (2008) (focusing on deletion of words may reflect literal terms of measure, but may not convey necessary practical information). In this instance, to enable voters to understand what will happen if IP 61 is approved, the Attorney General must directly explain that the measure will bar some nonsurgical procedures—some forms of contraception that work after the point of conception.

We reach a different conclusion with respect to petitioners' argument that the measure must specifically explain the effect that IP 61 will have on a woman's constitutional rights. As noted, petitioners contend, citing

*Planned Parenthood*, that Article I, section 20, of the Oregon Constitution prohibits "unequal access to abortion based on ability to pay" and that the summary must explain that IP 61 overrides that prohibition. In *Planned Parenthood*, the Court of Appeals determined the constitutionality of a particular administrative rule. 63 Or App at 46. Although petitioners may be correct that that case stands for a broader principle, this court has not decided whether, as petitioners contend, Article I, section 20, imposes a general prohibition on "unequal access to abortion based on ability to pay," and this is not the appropriate forum for us to do so. Petitioners do not challenge the ballot title summary on the basis that it fails to include a general statement about the effect that a constitutional amendment may have on existing constitutional rights and protections. Rather, they challenge the Attorney General's failure to include a more particular statement describing existing constitutional rights and protections, and the effect that IP 61 will have if enacted. Given the unsettled state of the law, that is neither appropriate nor required here. *See, e.g.*, *[Vaandering v. Rosenblum](link)*, 359 Or 1, 12-13, __ P3d __ (2016) (declining to decide relationship between statutes in ballot measure proceeding).

The ballot title is referred to the Attorney General for modification.